IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 8:13-cr-00026 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | BRIEF IN SUPPORT OF |
| | ) | DEFENDANT'S MOTION TO CONTINUE |
| ARTURO W. TORRES, | ) | |
| | ) | |
| Defendant. | ) | |

On June 26, 2012, Account No. xxxxx7576 at the First National Bank of Omaha was seized by the Department of the Treasury, Internal Revenue Service (IRS) from the business of Defendant Arturo Torres, for alleged violations of Title 31 U.S.C. 5324. The amount taken was $24,077.91

On August 6, 2012, the IRS advised Mr. Torres that the property had been seized as being involved in a transaction prohibited under 18 U.S.C. 981(a)(1)(A) and Title 31 U.S.C. 5317(c)(2) and that administrative proceedings had been initiated to perfect forfeiture of the property.

Pursuant to procedures set forth in said letter and 18 U.S.C. 983, Mr. Torres claimed ownership of the property, and filed the necessary forms to perfect his claim. The Government did not respond and the refund, plus any interest thereon became due and remains due and owing to Mr. Torres.

On January 24, 2013, the United States Attorney for the District of Nebraska and the Acting Special Agent in Charge of the IRS Criminal Investigation announced the indictment of Mr. Torres and separate and unrelated indictments of three other individuals "for structuring financial transactions in an effort to defeat legal reporting requirements imposed on financial institutions", in violation of 31 U.S.C. §3824(a)(1).

Mr. Torres, who is the sole proprietor of a used car lot at 1927 South 13th Street, Omaha, Nebraska 68108, under the trade name Advanced Auto Sales, operates a cash business.

An October 25, 2014 article published by the New York Times tells the story of small business owner Carol Hinders who for 40 years "dished out Mexican specialties at her modest cash-only restaurant" in Arnolds Park, Iowa until "two tax agents knocked on her door and informed her that they had seized (from) her checking account almost $33,000.00". (Please see attached.)

"The Internal Revenue Service Agents did not accuse Ms. Hinders of money laundering or cheating on her taxes – in fact, she was not charged with any crime, instead, "the money was seized solely because she had deposited less than $10,000 at a time, which they viewed as an attempt to avoid triggering a required government report".

"Using a law designed to catch drug traffickers, racketeers and terrorists by tracking their cash, the government has gone after run-of-the-mill business owners and wage earners without so much as an allegation that they have committed serious crimes. The government can take the money without ever filing a criminal complaint and the owners are left to prove they are innocent. Many give up".

"On Thursday, in response to questions from the New York Times, the IRS announced that it would curtail the practice, focusing instead on cases where the money is believed to have been acquired illegally or seizure is deemed justified by 'exceptional circumstances'".

"Richard Weber, the Chief of Criminal Investigation at the I.R.S. said in a written statement, 'this policy update will insure that C.I. continues to focus our limited resources on identifying and investigating violations within our jurisdiction that closely aligned to the C.I.'s mission and key priorities.'"

The article points out that money was seized under an increasingly controversial area of law known as a Civil Asset Forfeiture, which allows law

enforcement agents to take private property they suspect of being tied to crime, even if no criminal charges are filed. Law enforcement agencies get to keep a share of whatever is forfeited.

"Critics say this incentive has led to the creation of a law enforcement dragnet, with more than 100 multiagency task forces combing through bank account reports, looking for accounts to seize."

Until the publication of the New York Times article, the Defendant was under the belief that the Indictment stemmed from a report to the IRS of some suspicious activity pointing toward the laundering of drug money, a position that has been continually maintained by agents of the Government without proof. It now appears to be clear that the seizure and Indictment in the instant action were part of the overall systematic attempt by the IRS to seize funds from small cash businesses with no proof of illegal activity, but were too small to fight back, all pursuant to Section 31 U.S.C. 5317(c)(2) and its application, which the Defendant alleges is unconstitutional.

The practice has come to the attention of the Institute for Justice that is seeking reform, which the New York Times notes has "analyzed structuring data from the I.R.S. which made 639 seizures in 2012, up from 114 in 2005. Only one in five was prosecuted as a criminal structuring case".

In the short time that Defendant has had to investigate issues raised in the news article, he has learned the following:

1)   Richard Weber's policy statement of the IRS appears to be to return to only going after those persons whose money is from an illegal source.

2)   Information available on others indicted and referenced in the press release of January 24, 2013 has produced the following:

    a)   Peter V. Bristol owned a buy here, pay here auto sales business which he operated for over 20 years;

    b)   Randy L. Evans owned a buy here, pay here auto sales business which he operated for over 32 years;

    c) Irma Crispin-Gomez was likewise involved in the auto sales business;

  It appears that all ran similar businesses to that of the Defendant and all entered plea agreements in return for probation.

  3. According to a September 8, 2014 article in the Washington Post "Since 2001, police have seized $2.5 billion in cash from people who were never charged with a crime."

  Based on what he has been able to learn at this point, the Defendant is respectfully asking for the time to investigate the policy change of the IRS as reported in the New York Times and determine the true nature, scope and information garnered from the Government's investigation.

  For example, it appears that the Government at one point changed the policy of using civil forfeiture actions to fight criminal activity and began to utilize it to seize money from "cash and pay" businesses where there was no evidence of criminal activity and the proprietors of those businesses, like the Defendant, were too small to fight back.

  The IRS has apparently recognized this abuse of process and returned to a process that calls for civil forfeiture to be tied to some form of criminal activity.

  The Defendant is asking that he be given a short time to investigate the effect of the policy change on his case and to receive any Rule 16 production from the Government that relates to how it identified forfeiture targets and the process that was followed to seize his property and that of others.

  DATED this 3rd day of November, 2014.

        ARTURO W. TORRES, Defendant

      BY: _/s/ D. C. Bradford III_
        D. C. "Woody" Bradford III #10402
        BRADFORD & COENEN , LLC
        1620 Dodge Street, Suite 1800
        Omaha, NE  68102-1505
        (402) 342-4200

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of November, 2014, I electronically filed the foregoing PLEADING with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Russell X. Mayer, U.S. Attorney's Office, 1620 Dodge Street #1400, Omaha, Nebraska 68102.

    /s/ D. C. Bradford III
D. C. "Woody" Bradford III #10402
BRADFORD & COENEN, LLC
1620 Dodge Street, Suite 1800
Omaha, Nebraska 68102-1505
402-342-4200
wbradford@bradfordcoenen.com

**The New York Times**    http://nyti.ms/1rB2Y9n



U.S. | NYT NOW

# Law Lets I.R.S. Seize Accounts on Suspicion, No Crime Required

By SHAILA DEWAN    OCT. 25, 2014

ARNOLDS PARK, Iowa — For almost 40 years, Carole Hinders has dished out Mexican specialties at her modest cash-only restaurant. For just as long, she deposited the earnings at a small bank branch a block away — until last year, when two tax agents knocked on her door and informed her that they had seized her checking account, almost $33,000.

The Internal Revenue Service agents did not accuse Ms. Hinders of money laundering or cheating on her taxes — in fact, she has not been charged with any crime. Instead, the money was seized solely because she had deposited less than $10,000 at a time, which they viewed as an attempt to avoid triggering a required government report.

"How can this happen?" Ms. Hinders said in a recent interview. "Who takes your money before they prove that you've done anything wrong with it?"

The federal government does.

Using a law designed to catch drug traffickers, racketeers and terrorists by tracking their cash, the government has gone after run-of-the-mill business owners and wage earners without so much as an allegation that they have committed serious crimes. The government can take the money without ever filing a criminal complaint, and the owners are left to prove they are innocent. Many give up.

"They're going after people who are really not criminals," said David Smith, a former federal prosecutor who is now a forfeiture expert and lawyer in Virginia. "They're middle-class citizens who have never had any trouble with the law."

On Thursday, in response to questions from The New York Times, the I.R.S. announced that it would curtail the practice, focusing instead on cases where the money is believed to have been acquired illegally or seizure is deemed justified by "exceptional circumstances."

Richard Weber, the chief of Criminal Investigation at the I.R.S., said in a written statement, "This policy update will ensure that C.I. continues to focus our limited investigative resources on identifying and investigating violations within our jurisdiction that closely align with C.I.'s mission and key priorities." He added that making deposits under $10,000 to evade reporting requirements, called structuring, is still a crime whether the money is from legal or illegal sources. The new policy will not apply to past seizures.

The I.R.S. is one of several federal agencies that pursue such cases and then refer them to the Justice Department. The Justice Department does not track the total number of cases pursued, the amount of money seized or how many of the cases were related to other crimes, said Peter Carr, a spokesman.

But the Institute for Justice, a Washington-based public interest law firm that is seeking to reform civil forfeiture practices, analyzed structuring data from the I.R.S., which made 639 seizures in 2012, up from 114 in 2005. Only one in five was prosecuted as a criminal structuring case.

The practice has swept up dairy farmers in Maryland, an Army sergeant in Virginia saving for his children's college education and Ms. Hinders, 67, who has borrowed money, strained her credit cards and taken out a second mortgage to keep her restaurant going.

Their money was seized under an increasingly controversial area of law known as civil asset forfeiture, which allows law enforcement agents to take property they suspect of being tied to crime even if no criminal charges are filed. Law enforcement agencies get to keep a share of whatever is forfeited.

Critics say this incentive has led to the creation of a law enforcement dragnet, with more than 100 multiagency task forces combing through bank reports, looking for accounts to seize. Under the Bank Secrecy Act, banks and other financial institutions must report cash deposits greater than $10,000. But since many criminals are aware of that requirement, banks also are supposed to report any suspicious transactions, including deposit patterns below $10,000. Last year, banks filed more than 700,000 suspicious activity reports. Owners who are caught

up in structuring cases often cannot afford to fight. The median amount seized by the I.R.S. was $34,000, according to the Institute for Justice analysis, while legal costs can easily mount to $20,000 or more.

There is nothing illegal about depositing less than $10,000cash unless it is done specifically to evade the reporting requirement. But often a mere bank statement is enough for investigators to obtain a seizure warrant. In one Long Island case, the police submitted almost a year's worth of daily deposits by a business, ranging from $5,550 to $9,910. The officer wrote in his warrant affidavit that based on his training and experience, the pattern "is consistent with structuring." The government seized $447,000 from the business, a cash-intensive candy and cigarette distributor that has been run by one family for 27 years.

There are often legitimate business reasons for keeping deposits below $10,000, said Larry Salzman, a lawyer with the Institute for Justice who is representing Ms. Hinders and the Long Island family pro bono. For example, he said, a grocery store owner in Fraser, Mich., had an insurance policy that covered only up to $10,000 cash. When he neared the limit, he would make a deposit.

Ms. Hinders said that she did not know about the reporting requirement and that for decades, she thought she had been doing everyone a favor.

"My mom had told me if you keep your deposits under $10,000, the bank avoids paperwork," she said. "I didn't actually think it had anything to do with the I.R.S."

In May 2012, the bank branch Ms. Hinders used was acquired by Northwest Banker. JoLynn Van Steenwyk, the fraud and security manager for Northwest, said she could not discuss individual clients, but explained that the bank did not have access to past account histories after it acquired Ms. Hinders's branch.

Banks are not permitted to advise customers that their deposit habits may be illegal or educate them about structuring unless they ask, in which case they are given a federal pamphlet, Ms. Van Steenwyk said. "We're not allowed to tell them anything," she said.

Still lawyers say it is not unusual for depositors to be advised by financial professionals, or even bank tellers, to keep their deposits below the reporting threshold. In the Long Island case, the company, Bi-County Distributors, had three bank accounts closed because of the paperwork burden of its frequent cash deposits, said Jeff Hirsch, the eldest of three brothers who own the company.

Their accountant then recommended staying below the limit, so for more than a decade the company had been using its excess cash to pay vendors.

More than two years ago, the government seized $447,000, and the brothers have been unable to retrieve it. Mr. Salzman, who has taken over legal representation of the brothers, has argued that prosecutors violated a strict timeline laid out in the Civil Asset Forfeiture Reform Act, passed in 2000 to curb abuses. The office of the federal attorney for the Eastern District of New York said the law's timeline did not apply in this case. Still, prosecutors asked the Hirsches' first lawyer, Joseph Potashnik, to waive the CARFA timeline. The waiver he signed expired almost two years ago.

The federal attorney's office said that parties often voluntarily negotiated to avoid going to court, and that Mr. Potashnik had been engaged in talks until just a few months ago. But Mr. Potashnik said he had spent that time trying, to no avail, to show that the brothers were innocent. They even paid a forensic accounting firm $25,000 to check the books.

"I don't think they're really interested in anything," Mr. Potashnik said of the prosecutors. "They just want the money."

Bi-County has survived only because longtime vendors have extended credit — one is owed almost $300,000, Mr. Hirsch said. Twice, the government has made settlement offers that would require the brothers to give up an "excessive" portion of the money, according to a new court filing.

"We're just hanging on as a family here," Mr. Hirsch said. "We weren't going to take a settlement, because I was not guilty."

Army Sgt. Jeff Cortazzo of Arlington, Va., began saving for his daughters' college costs during the financial crisis, when many banks were failing. He stored cash first in his basement and then in a safe-deposit box. All of the money came from paychecks, he said, but he worried that when he deposited it in a bank, he would be forced to pay taxes on the money again. So he asked the bank teller what to do.

"She said: 'Oh, that's easy. You just have to deposit less than $10,000.'"

The government seized $66,000; settling cost Sergeant Cortazzo $21,000. As a result, the eldest of his three daughters had to delay college by a year.

"Why didn't the teller tell me that was illegal?" he said. "I would have just plopped the whole thing in the account and been done with it."

A version of this article appears in print on October 26, 2014, on page A1 of the New York edition with the headline: Law Lets I.R.S. Seize Accounts on Suspicion, No Crime Required.

© 2014 The New York Times Company